## Case No. 18,070.

### In re WRIGHT et al.

[2 N. B. R. 41 (Quarto, 14);[1] 15 Pittsb. Leg. J. 553.]

District Court, W. D. Michigan. 1868.

BANKRUPTCY — DISCHARGE — FRAUDULENT DEBTS.

The creation of a debt by fraud is not a ground upon which to oppose the discharge of a bankrupt. Such debts may be proved, and the dividend thereon shall be payment on account of said debt. Where a bankrupt contracted a debt through fraud he continues liable notwithstanding his discharge.

In this case, on the return day of the order to show cause why the bankrupts [Wright & Peckham] should not have a final discharge, Messrs. O. P. Ramsdell & Co., creditors, of Buffalo, N. Y., by their attorneys, appeared before the register, H. E. Thompson, Esq., in opposition thereto, and filed a specification of the grounds of their opposition, substantially as follows: That immediately prior to the purchase of the goods from the said O. P. Ramsdell & Co., by the said bankrupts, the said bankrupts represented and claimed to said Ramsdell & Co., that they were then worth twenty thousand or thirty thousand dollars, and obtained credit for said goods from said Ramsdell & Co., upon such representations; and that the same

were false and fraudulent, and were made by said bankrupts with the intent to defraud said Ramsdell & Co. This specification was excepted to by the counsel for the bankrupt, for the reason (among others) that the facts set forth in said specification constitute no ground for opposing the discharge of said bankrupts.

## Case No. 18,071.

### In re WRIGHT.

[2 N. B. R. 490 (Quarto, 155).][1]

District Court, D. New Jersey. 1869.

JUDGMENT AGAINST BANKRUPT — VALIDITY — WARRANT FOR CONFESSION—NOTICE OF INSOLVENCY—KNOWLEDGE OF ATTORNEY.

1. Where a debtor, not being insolvent, borrowed money and gave bond with warrant of attorney to the creditor to confess judgment, and he took judgment with notice of subsequent bankruptcy and levy made, *held*, the judgment was good against and should be paid out of the assets in court of the proceeds of sale of bankrupt's property.

[Criticised in Re Lord, Case No. 8,503.]

2. Judgments obtained against a debtor at the time insolvent, by creditors not shown by the evidence to have had reason so to believe him, *held*, to be good against assets.

3. Semble, that knowledge of such insolvency is not necessarily to be presumed of the creditors because of such knowledge by their attorney.

[Cited in Graham v. Stark, Case No. 5,676; Singer v. Sloan, Id. 12,899.]

In bankruptcy.

FIELD, District Judge. This is a case of involuntary bankruptcy. The petition was filed on the 5th day of January, 1869. On the 30th of December, 1868, judgments were obtained against the debtor, by James Van De-

---

[1] [Reprinted from 2 N. B. R. 41 (Quarto, 14), by permission.]

[1] [Reprinted by permission.]

venter, for two thousand six hundred and eighty-six dollars and forty-four cents, by Susan D. Brown, for two hundred and seventy-eight dollars and ninety-seven cents, and by George C. Parker & Brothers, for one hundred and ninety-nine dollars and forty-six cents. On the same day executions were sued out upon these judgments, directed to the sheriff of the county of Mercer, and a levy made upon all the property of the debtor. Upon filing the petition in bankruptcy, an injunction was granted, restraining the sheriff from selling under these executions. The property of the debtor consisted chiefly of dry-goods and groceries in a store at Princeton, where he had been carrying on business. This property being perishable and liable to deterioration in value, upon the adjudication in bankruptcy, an order was made, on the application of the petitioning creditor, and with the consent of the judgment creditors, that the marshal should sell the goods in the store, and bring the money into court. This was done, and thereupon the counsel for the judgment creditors applied for a rule to show cause why the amount of their respective judgments should not be paid out of the proceeds of the sale. The application was granted, and leave given to all parties in interest to take testimony and produce evidence before the register. This evidence and the arguments of counsel, have been submitted to me, and the motion now is to make the rule absolute. This motion is resisted by the petitioning creditor upon the ground that as to the judgment of James Van Deventer, it was a judgment on a bond with warrant of attorney to confess judgment, and that at the time when the warrant was given, and also at the time when judgment was confessed, [J. B.] Wright was insolvent, and that Van Deventer had reasonable cause to believe that such was his condition, and that a fraud upon the bankrupt act [of 1867 (14 Stat. 517)], was intended; and as to the other two judgments, which were judgments by default, upon which executions were issued and a levy made, it is insisted, that Wright thereby suffered his property to be taken on legal process, with intent to give a preference, and to defeat or delay the operations of the act, and that at the time of doing so he was insolvent, and that the judgment creditors had reasonable cause to believe that he was so.

Some question was raised by the counsel for the judgment creditors, as to whether, admitting these judgments to be liable to the objection stated, they come within the letter of the last clause of the thirty-ninth section of the act. That clause is in the following words: "And if such person shall be adjudged a bankrupt, the assignees may recover back the money or other property so paid, conveyed, sold, assigned, or transferred contrary to this act, provided the person receiving such payment or conveyance had reasonable cause to believe that a fraud on this act

was intended, and that the debtor was insolvent; and such creditor shall not prove his debt in bankruptcy." It is not denied, of course, that the matters charged were acts of bankruptcy on the part of the debtor, but were they payments, conveyances, or transfers made by the debtor, and could these judgment creditors be said to have received a payment or conveyance within the meaning of this section of the act? I am satisfied there is nothing in this objection. A debtor who suffers his property to be taken on legal process, and sold for the payment of a debt due to a creditor, does thereby make a transfer and conveyance of his property within the meaning of the act. Such was the opinion of Judge Blatchford, in Re Black [Case No. 1,457], and there can be no doubt about the correctness of that opinion. If this were not so, the provisions of the thirty-ninth section would become practically inoperative in respect to all property of the debtor levied upon or sold under a judgment and execution, no matter how obtained; and as the confession of a judgment, or the suffering of his property to be taken on legal process is a frequent and well-known mode of preferring a creditor, one of the principal objects of the bankrupt act would be defeated.

Let us now proceed to the examination of these judgments; and as that in favor of Mr. Van Deventer stands upon a different footing from the others, it will be considered separately. The bond, with a warrant of attorney to confess judgment, was given by Wright, on the 7th of March, 1868, but the judgment was not entered up until the 30th of December following. Was Wright at the time this bond was executed, or at the time when judgment was confessed, insolvent, and had Van Deventer reasonable cause to believe that such was his condition? But before looking at the evidence bearing upon this point, let us endeavor to ascertain the meaning of the word "insolvent" as used in this act; for I suspect a good deal of misapprehension exists upon this subject in the public mind, and it is very important that it should be corrected. By the bankrupt act of 1841 [5 Stat. 440], all transfers of property made by the bankrupt, in contemplation of bankruptcy, and for the purpose of giving a preference to one creditor over others, were deemed utterly void, and a fraud upon the act. What was meant by the words "in contemplation of bankruptcy," was a subject of a good deal of discussion. Different interpretations were put upon them in different circuits. By some judges they were held to mean contemplation of insolvency—of a simple inability to pay as debts should become payable. By other judges it was held that the debtor must contemplate an act of bankruptcy, or a voluntary application for the benefit of the bankrupt law. But it was decided by the supreme court, in the case of Buckingham v. McLean, 13 How. [54 U. S.] 150, that the words "contemplation of bank-

ruptcy," did not mean contemplation of insolvency—of a simple inability to pay as debts should become due and payable—but meant that the debtor must contemplate the commission of what was declared by the act to be an act of bankruptcy, or must have contemplated an application by himself, to be decreed a bankrupt. In short, it was held that the word "bankruptcy" meant something more than "insolvency"—something less restricted. It is a little singular that this question should have been presented to the supreme court for the first time in 1851, years after the bankrupt act had been repealed.

Having thus ascertained that "bankruptcy" means something more than "insolvency," let us see what "insolvency," as used by the act, means. The language of the thirty-fifth and thirty-ninth sections of the bankrupt act is almost identical with that of the insolvent law of Massachusetts, and the decisions of the court of that state as to what was meant by the word "insolvency" are entitled to much consideration. "By the term 'insolvency,'" says Shaw, C. J., in the case of Thompson v. Thompson, 4 Cush. 127, "we do not understand an absolute inability to pay one's debts at some future time, upon a settlement and winding up of a trader's concerns; but a trader may be said to be in insolvent circumstances, when he is not in a condition to pay his debts in the ordinary course, as persons carrying on trade usually do." And in the case of Lee v. Kilburn, 3 Gray, 594, the supreme judicial court of Massachusetts, after speaking of the extreme difficulty of giving a definition of insolvency that would be applicable to all classes of persons who may avail themselves of the benefits of the insolvent laws, proceed to say: "But it is clear, a trader may be insolvent, and may be known to be so, to the creditor seeking a preference, though he is not compelled to stop business. Men often continue to carry on business upon the credit they have before acquired, long after they were actually and hopelessly insolvent; sometimes with the view of better enabling themselves to make payment to preferred creditors, contracting new debts to pay old ones; sometimes with a view of living upon the property in their hands. These are among the evils which it was the policy of the insolvent laws to prevent. * * * We do not understand that an absolute inability to pay one's debts at a future time, upon the winding up of his concerns, is necessary to constitute insolvency in a trader. What is meant by the insolvency of a trader, as an abstract proposition, can be stated only in general terms. A trader may be said to be insolvent, when he is not in a condition to pay his debts in the ordinary course, as persons carrying on trade usually do. This is but a general abstract rule, modified more or less by the habits and usages of the place where the

debtor resides, and of the particular business in which he is engaged." The very same definition is given to the term "insolvency," by Judge Nelson in the case of Merchants' Nat. Bank of Hastings v. Traux [Case No. 9,451]. " 'Insolvency' within the meaning of the bankrupt act, when applied to traders, means inability to pay debts in the ordinary course of business, as persons carrying on trade usually do." And the same view is taken of it by Judge Blatchford, in Re Black, to which I have before referred.

In this sense of the word "insolvency" then, had Van Deventer reasonable cause to believe that Wright was insolvent, when the bond with warrant of attorney was executed? A good deal of evidence has been taken. Both Van Deventer and Wright were examined at great length. All the dealings and transactions of Wright, from the time the bond was given, up to the time when the judgment was entered up, have been minutely enquired into. I will not go into a detailed examination of this evidence. It is not necessary, as will be seen from the view which I feel constrained to take of this case. I will only state the conclusions to which I have come after a careful examination of the evidence. I do not think there is any sufficient proof, that at the time when the judgment bond was given, Wright was insolvent, or that Van Deventer had reasonable cause to believe that he was so. He had difficulty in meeting his engagements. And his object in applying to Van Deventer for a loan of money was, that he might relieve himself from these embarrassments. Van Deventer required him to make a statement of his debts and liabilities. He did so, and the statement showed a balance in his favor to a large amount. He assured Van Deventer that if he would let him have the amount required, it would relieve him from all his difficulties. I think there is no evidence that Wright was insolvent at this time, or that Van Deventer had reasonable cause to believe that he was so. But as to his condition when the judgment was entered up, the conclusion to which I have come is very different. At that time, the evidence clearly shows, that not only was Wright insolvent, in the sense in which I have explained that term, but that Van Deventer had reasonable cause to believe that such was his condition. He certainly was not able to pay his debts in the course of business, as persons carrying on trade usually do. And it is hardly possible that Van Deventer could have been ignorant of this fact. He knew enough at least to put him upon enquiry. And if he had made that enquiry, he would have been satisfied that such was Wright's condition.

These are the conclusions to which I have arrived. And now, what is the legal result? If a creditor takes a bond, with warrant of attorney to confess judgment, at a time when he has no reason to believe that the

debtor is insolvent, will the fact that the debtor was insolvent when the judgment was entered up, and that the creditor knew him to be so, vitiate that judgment, and render it a fraud under the bankrupt act? This is an interesting and important question, and one which seems to have escaped the attention of counsel. And yet it is one upon the solution of which the determination of this case very much depends.

This question came before the supreme court of the United States, in the case of Buckingham v. McLean, before referred to. In that case the question was, whether the giving of a power of attorney to confess judgment was an act of bankruptcy, under the act of 1841. The court held, that if the debtor did not contemplate the act of bankruptcy, at the time the power of attorney was executed, it was of no consequence what his condition was when the judgment was entered up. The court says: "It would seem that if the intent of the debtor is to give a legal quality to the transaction, it must be an intent accompanying an act done by himself, and not an intent or purpose arising in his mind afterwards, while third persons are acting; and that consequently, we must enquire whether the debtor contemplated bankruptcy when he executed the power. It is true, this construction would put it in the power of creditors, by taking a bond and warrant of attorney, while the debtor was solvent and did not contemplate bankruptcy, to enter up a judgment and issue execution, and by a levy, acquire a valid lien, down to the very moment when the title of the assignee began. But this was undoubtedly so under the statute of James, which, like ours, contained no provision to meet this mischief; and it became so great that, by the one hundred and eighth section of the revising act of Geo. IV., it was enacted that no creditor, who shall sue out execution on any judgment obtained by default, confession. or nil dicit, shall avail himself of such execution, to the prejudice of other fair creditors, but shall be paid ratably with such creditors." If the bankrupt act of 1841 had continued to exist, a similar addition to its provisions would doubtless have become necessary.

Is there any provision in our bankrupt act to meet this mischief? It is suggested, that by permitting the judgment to be entered up, Wright thereby suffered his property to be taken on legal process. But how could he have prevented the judgment from being entered up? There is nothing to show that he was aware of Van Deventer's intention to enter up the judgment at the time when he did. But it may be said, that as soon as he found himself insolvent, he ought to have prevented any judgment from being obtained against him by going into voluntary bankruptcy. But although insolvent, in the sense of not being able to pay his debts in the ordinary course as they became due, yet the evidence shows that he had

no intention of breaking up business, and fully believed that he had ample means for the payment of all his debts. This is a condition in which country traders very often find themselves, and to hold that it is their duty always under such circumstances to go into voluntary bankruptcy, would be to lay down a harsh rule, and one that might work a good deal of injustice. We must not press this doctrine too far. It is not wise to do so. It might bring discredit upon the act itself. At all events, in this case, I am not prepared to say that Van Deventer, although he knew when he entered up his judgment that Wright was insolvent in the sense in which I have explained that term, had any reasonable cause to believe that a fraud upon the act was intended. Let the judgment of Van Deventer then be paid out of the money in court.

With regard to the other two judgments, one in favor of Susan D Brown, and the other of Parker & Brother, I have already stated, as my conclusion from the evidence; that at the time they were obtained, Wright was insolvent; but there is not the slightest evidence to show that these judgment creditors were aware of his insolvency. Van Deventer's business relations with Wright were of such a character that he could not very well have been ignorant of the fact. But Mrs Brown is a retired lady, and Parker & Brother reside in New York, and there is nothing to bring home to either of them a knowledge of Wright's insolvency. It is said, however, that Mr. Hageman was their attorney, and as he was aware of the insolvency of Mr. Wright, they must be presumed to have had knowledge of it also. But although parties are, in many cases, no doubt, bound by the acts of their attorney, I am not aware of any rule of law, in virtue of which they are presumed to know all that he knows. Suppose that he does not communicate his knowledge to them. But where is the evidence that Mr. Hageman had any knowledge of Wright's insolvency? I can find none. But it is further insisted, that in the case of these two judgments, the service of process was acknowledged by Wright, and that this is evidence of a design upon the part of the plaintiffs to obtain an undue advantage over other creditors. Nothing is more common when a suit is commenced, than to have the service of the summons acknowledged by the defendant. It saves the trouble and expense of having it served by the sheriff. The sheriff is the only one who has a right to complain of it. But it is said, the object of it was to gain time, so that a judgment might be obtained sooner than if the summons had been served by the sheriff. That this was not the object of it, however, is apparent from the fact that these judgments were not obtained until some twenty days after the plaintiffs were entitled to them. Let these judgments also be paid out of the fund in court. Rule made absolute.